IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ABBIE SHIBE, | : |
| Plaintiff, | : CASE NO. 1:21-cv-01436-SO |
| v. | : JUDGE BRIDGET MEEHAN BRENNAN |
| CARDINAL CREDIT UNION, INC. | : |
| Defendant. | : |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Cardinal Credit Union, Inc. ("Defendant") respectfully moves for summary judgment on all claims asserted by Plaintiff Abbie Shibe ("Plaintiff"). Plaintiff asserts two gender discrimination claims in her Complaint for Damages and Reinstatement based on Ohio and federal law. Summary judgment is appropriate on both claims because "there is no genuine dispute as to any material fact and [Defendant] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). This Motion is supported by the attached Memorandum in Support, the deposition of Plaintiff, and the Declaration of Christine Blake.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com

*Attorneys for Defendant*

# **MEMORANDUM IN SUPPORT**

## **TABLE OF CONTENTS**

|      |                                                                                                      | Page |
|------|------------------------------------------------------------------------------------------------------|------|
| I    | Statement Of Adherence To L.R. 7.1                                                                   | 4    |
| II.  | Brief Statement Of The Issues                                                                        | 4    |
| III. | Summary Of The Argument                                                                              | 4    |
| IV.  | Relevant And Undisputed Facts                                                                        | 5    |
|      | A. Defendant Is A Credit Union That Focuses On Customer Service                                      | 5    |
|      | B. Plaintiff's General Employment History With Defendant                                             | 6    |
|      | C. Plaintiff's Documented Performance Issues                                                         | 7    |
|      | D. The COVID-19 Pandemic Caused Cardinal To Implement A Significant Reduction-In-Force.              | 9    |
| V.   | Argument                                                                                             | 10   |
|      | A. Standard Of Review                                                                                | 10   |
|      | B. Plaintiff's Title VII And R.C. 4112.01 Gender Discrimination Claims Fail As A Matter Of Law       | 11   |
|      | 1. Plaintiff cannot prove a prima facie case of discrimination                                       | 12   |
|      | 2. Plaintiff cannot meet the but for standard                                                        | 13   |
|      | 3. Plaintiff cannot prove pretext                                                                    | 14   |
| VI.  | Conclusion                                                                                           | 15   |

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page No.**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)                                                        11

*Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014)                                 11

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020)                                                            13

*Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461 (6th Cir. 1995)                                                  14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)                                                            11

*GM, LLC v. FCA US, LLC*, 44 F.4th 548, 559 (6th Cir. 2022)                                                        13

*Hamilton v. SYSCO Food Servs. of Cleveland, Inc.*, 170 Ohio App.3d 203, 2006-Ohio-6419, 866 N.E.2d 559, ¶ 27 (8th Dist.)   11

*Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008)                                              11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)                                                       12

*McKinley v. Brownlee*, W.D.Pa. No. 04-222 Erie, 2006 U.S. Dist. LEXIS 108506, at *16 (Dec. 13, 2006)               13

*MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp.3d 731, 736 (N.D. Ohio 2015)                          11

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)                                                   11

*Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 838 (6th Cir. 2012)                                         5

*Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021)                                                 5

*University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013)                                   13

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003)                                        14

**Statutes**

Fed.R.Civ.P. 56(a)                                                                                                 10

R.C. 4112.01                                                                                                       11

I. **STATEMENT OF ADHERENCE TO L.R. 7.1**

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio. The present action has been assigned to the standard case management track.

II. **BRIEF STATEMENT OF THE ISSUES**

A. Whether summary judgment should be granted in favor of Defendant on Plaintiff's Title VII gender discrimination claim.

B. Whether summary judgment should be granted in favor of Defendant on Plaintiff's R.C. 4112.01 gender discrimination claim.

III. **SUMMARY OF THE ARGUMENT**

Plaintiff Abbie Shibe ("Plaintiff"), a former branch manager for Defendant Cardinal Credit Union, Inc. ("Defendant"), alleges that Defendant's female Chief Executive Officer hired Plaintiff in 2019 only to decide to select Plaintiff for a reduction-in-force a little over a year later. Plaintiff's theory is even more called into question when the undisputed facts are reviewed.

Cardinal is a credit union based in Mentor. Due to the COVID-19 Pandemic, Cardinal implemented a significant reduction-in-force. A total of fourteen positions were eliminated and one branch office was closed. Plaintiff was selected for the reduction because she was the only branch manager who was on disciplinary probation at the time of the reduction.

Plaintiff has no direct evidence of discrimination, admits that she cannot disagree that Cardinal had grounds to implement the reduction, other female branch managers were not selected for the reduction, and one other male branch manager was selected for the reduction. Moreover, Plaintiff's performance issues were well-documented. Accordingly, summary judgment should be granted in favor of Defendant because Plaintiff cannot prove a prima facie

case of sex discrimination, Defendant can prove its legitimate, nondiscriminatory reason for discharging Plaintiff, and Plaintiff cannot prove pretext. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021); *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 838 (6th Cir. 2012).

IV. **RELEVANT UNDISPUTED FACTS**

This Motion is based on the deposition of Plaintiff and the Declaration of Christine Blake, Defendant's Chief Executive Officer. (Declaration of Christine Blake at ¶2 (hereinafter "Dec. Blake at __") (attached as Exhibit 1)). The material facts are not in dispute and summary judgment should be granted in favor of Defendant.

A. **Defendant Is A Credit Union That Focuses On Customer Service.**

Defendant is a credit union. (Dec. Blake at 4). A credit union is a member-owned, not-for-profit financial cooperative that is owned, managed, and utilized by its member-owners. (Dec. Blake at 5). Cardinal's policies provide that member-owned means that as a credit union member, Cardinal's members are never only a customer, but a full partner and owner of Cardinal. (Dec. Blake at 5).

Cardinal's motto is "People Helping People." (Dec. Blake at 6). Cardinal's policies require Cardinal employees to demonstrate this motto in every transaction that takes place at Cardinal. (Dec. Blake at 6). Cardinal promises each member personalized service and individualized financial attention. (Dec. Blake at 6). Plaintiff admits that the customer experience is very important at Cardinal. (Deposition of Plaintiff at 33 (hereinafter "Dep. Plaintiff at ___") (cited pages attached as Exhibit 2). In order to verify responsiveness, Plaintiff recalls that Cardinal enforced a rule that required Cardinal employees to respond to customer issues within twenty-four hours. (Dep. Plaintiff at 34).

Cardinal's headquarters is located in Mentor, Ohio. (Dec. Blake at 10). Cardinal's flagship branch for members is also located in Mentor. (Dec. Blake at 10). Prior to the COVID-19 Pandemic, in addition to the Mentor branch, Cardinal had branches located in Ashtabula, Austintown, Lakeland, and Willoughby. (Dec. Blake at 10).

Cardinal's policies prohibit all forms of discrimination, including sex discrimination. (Dec. Blake at 11 and Exhibit 1). In addition, Cardinal employees are also provided with complaint procedures if they believe they are the victim of discrimination. (Dec. Blake at 11). In fact, due to its size, Cardinal employees have direct access to both Cardinal's Chief Executive Officer and the Board. (Dec. Blake at 11).

As a former manager responsible for enforcing Defendant's policies, Plaintiff admits that she was aware that Defendant's policies prohibited harassment and discrimination. (Dep. Plaintiff at 37). In fact, Plaintiff was responsible for enforcing the policies due to her managerial status. (Dep. Plaintiff at 40). Plaintiff further admits that she understood that she could report any discrimination complaints to Defendant's Human Resources Department. (Dep. Plaintiff at 37). Plaintiff finally admits that she never complained of discrimination during her employment with Cardinal until after she was discharged. (Dep. Plaintiff at 38).

**B.    Plaintiff's General Employment History With Defendant.**

Plaintiff was hired by Cardinal on December 10, 2018. (Dec. Blake at 17); (Dep. Plaintiff at 15). Christine Blake, Defendant's long-tenured Chief Executive Officer was involved in the hiring process due to the fact that Plaintiff was applying for the Branch Manager position of Cardinal's largest branch located in Mentor, Ohio. (Dec. Blake at 17-18). Plaintiff recalls the Cardinal hiring process as including interviews by Blake, Cardinal's Chief Operating Officer, and

Cardinal's Human Resources Manager. (Dep. Plaintiff at 23-24). Plaintiff admits that Christine Blake, Cardinal's Chief Executive Officer, made the decision to hire her. (Dep. Plaintiff at 92).

Plaintiff's position with Cardinal was Branch Manager for Cardinal's Mentor, Ohio branch. (Dep. Plaintiff at 24). Plaintiff worked as Cardinal's Mentor Branch Manager until March 23, 2020. (Dec. Blake at 33 and Ex. 6). Plaintiff admits that she "enjoyed" her employment with Defendant. (Dep. Plaintiff at 39). Relevant to this lawsuit, Plaintiff admits that no Cardinal employee ever made any sex-based comments to her during her Cardinal employment. (Dep. Plaintiff at 38).

Plaintiff admits that the branch manager position is a difficult and important position. (Dep. Plaintiff at 19). Branch managers have human resources and compliance responsibilities. (Dep. Plaintiff at 19-20). In addition, a branch manager has profit and loss obligations. (Dep. Plaintiff at 19-20). As to Cardinal, Plaintiff admits that the Mentor branch was a busy and high demand location. (Dep. Plaintiff at 21). Finally, Plaintiff admits that not everyone can succeed as a branch manager. (Dep. Plaintiff at 20).

During her employment, Plaintiff recalls that the majority of the branch managers were females. (Dep. Plaintiff at 29-30). In fact, Plaintiff recalls that four of five branch managers were females at one point during her employment. (Dep. Plaintiff at 29-30). Plaintiff further recalls that the majority of employees at Cardinal were female. (Dep. Plaintiff at 31).

C. **Plaintiff's Documented Performance Issues.**

In 2019, Plaintiff's first full year as a branch manager, the Mentor branch had high employee turnover. (Dep. Plaintiff at 108). In fact, Plaintiff concedes that the turnover rate was "abnormally" high. (Dep. Plaintiff at 108). Plaintiff received a 3.6 out of 5 on her 2019 performance evaluation. (Dep. Plaintiff at Ex. 7); (Dec. Blake at 21 and Ex. 2). Plaintiff was

rated in five areas. (Dep. Plaintiff at Ex. 7). In two of the five areas, Plaintiff was rated as "Needs Improvement": (1) Knowledge of Job; and (2) Management. (Dep. Plaintiff at Ex. 7). Plaintiff admits that the performance evaluation put her on notice of performance issues. (Dep. Plaintiff at 110-111).

On January 27, 2020, Plaintiff received an Employee Verbal Warning Notice. (Dep. Plaintiff at Ex. 3). The Warning was due to Plaintiff's failure to timely respond to customer issues. (Dep. Plaintiff at Ex. 3). Plaintiff was advised of the customer response guidelines and placed on a disciplinary probation for thirty days beginning on January 27, 2020. (Dep. Plaintiff at Ex. 3). Plaintiff does not believe that this warning was discriminatory. (Dep. Plaintiff at 58) ("Q. Did you think that the two pieces of discipline were discriminatory? A. No.").

On February 19, 2020, Plaintiff was disciplined again due to a random inspection of her branch. (Dec. Blake at 25). Random inspections are often conducted by Cardinal in order to verify that procedures are being followed everyday by Cardinal management, not simply in advance of planned audits. (Dec. Blake at 25). The Mentor inspection revealed that Plaintiff was not following onboarding procedures and customer account cards were not properly audited and submitted. (Dep. Plaintiff at Ex. 4). Due to these issues, Plaintiff was placed on a sixty day disciplinary probation beginning on February 19, 2020. (Dep. Plaintiff at Ex. 4). Plaintiff also does not believe that this warning was discriminatory. (Dep. Plaintiff at 58) ("Q. Did you think that the two pieces of discipline were discriminatory? A. No.").

On March 10, 2020, due to her continuing performance issues, Plaintiff was given a document entitled 2020 Expectations. (Dec. Blake at 26); (Dep. Plaintiff at Ex. 8). The expectations listed in the document are the most basic functions that are required of a Branch Manager. (Dec. Blake at 26); (Dep. Plaintiff at Ex. 8). Plaintiff reviewed and signed the document

on March 10, 2020. (Dec. Blake at 26); (Dep. Plaintiff at Ex. 8). Although Plaintiff was not discharged on this date, the Expectations and Plaintiff's disciplinary probationary status placed Plaintiff on notice that if her performance, and the performance of the Mentor branch, did not improve, she was subject to discharge. (Dec. Blake at 26); (Dep. Plaintiff at Ex. 8). As of March 10, 2020, Plaintiff was Cardinal's lowest performing Branch Manager and only Branch Manager on disciplinary probationary status. (Dec. Blake at 27).

### D. The COVID-19 Pandemic Caused Cardinal To Implement A Significant Reduction-In-Force.

The COVID-19 Pandemic greatly impacted Cardinal. (Dec. Blake at 28). The Pandemic required Cardinal to close it branch lobbies and to move branches to drive-through service only. (Dec. Blake at 28). Plaintiff admits that these changes took place while she was still employed by Cardinal. (Dep. Plaintiff at 14).

Due to the customer contact changes and the unknowns created by the Pandemic, Cardinal was forced to review its operations in order to determine if a reduction-in-force was necessary. (Dec. Blake at 28-29). The same three people who interviewed and hired Plaintiff also reviewed Cardinal's operations for the reduction: (1) Cardinal's Chief Executive Officer; (2) Cardinal's Chief Financial Officer, and (3) Cardinal's Human Resources Manager. (Dec. Blake at 29). This group ultimately concluded that one of Cardinal's branch offices needed to be closed and fourteen positions were eliminated. (Dec. Blake at 30-31 and Ex. 5), Males and females were impacted by the reduction. (Dec. Blake at 30); (Dep. Plaintiff at Ex. 6).

Plaintiff admits that the Mentor branch was greatly impacted by the reduction. (Dep. 72-73). Plaintiff's male Assistant Manager was selected for the reduction. (Dep. Plaintiff at 72-73). In addition to Plaintiff and the Assistant Manager, Plaintiff admits that five other Mentor branch employees were impacted by the reduction. (Dep. Plaintiff at 73); (Dec. Blake at 32). Plaintiff

4871-3605-1006.1 9

was selected for the COVID-19 Pandemic reduction due to her disciplinary probationary status and continuing performance issues. (Dec. Blake at 32). The termination letter explicitly referred to the COVID-19 Pandemic. (Dep. Plaintiff at Ex. 5).

Plaintiff admits that she has no evidence of discriminatory motive. (Dep. Plaintiff at 79 ("A. Again, I don't know why Ms. Blake made that decision"). Plaintiff further admits that she cannot explain her position that a woman would discriminate against Plaintiff due to the fact that Plaintiff is a woman. (Dep. Plaintiff at 78). Finally, Plaintiff admits that other female branch managers were not impacted by the reduction. (Dep. Plaintiff at 47).

Moreover, Plaintiff admits that the COVID-19 Pandemic caused the job market in the banking industry to come to a "standstill." (Dep. Plaintiff at 13). Plaintiff further admits that the Pandemic created a very uncertain time for everyone. (Dep. Plaintiff at 65). Finally, Plaintiff admits that she cannot disagree with Cardinal's decision that a reduction was necessary due to the Pandemic. (Dep. Plaintiff at 67).

Due to the uncertain nature of the COVID-19 Pandemic, Plaintiff's position was not initially replaced. (Dec. Blake at 34). Rather, Cardinal's current Chief Operating Officer took over Plaintiff's Branch Manager duties, and continued to perform his own Interim COO duties from March 23, 2020 until May 18, 2020. (Dec. Blake at 34). When Cardinal moved the Interim COO into this role, it was uncertain how long he would continue performing both roles because it was unknown when the branches would fully reopen for customers. (Dec. Blake at 34).

## V. ARGUMENT

### A. Standard of Review.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

Defendant, as the movant, has the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This Court evaluates the evidence in the light most favorable to Plaintiff when reviewing Defendant's motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). However, the mere scintilla of evidence supporting Plaintiff is not sufficient; there must be evidence on which a jury could reasonably find for Plaintiff in order to deny Defendants' motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Based on this Motion, Defendant has satisfied its initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008). The burden now shifts to Plaintiff who has the burden to "point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014). "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp. 3d 731, 736 (N.D. Ohio 2015).

### B. Plaintiff's Title VII And R.C. 4112.01 Gender Discrimination Claims Fail As A Matter Of Law.

Plaintiff's Complaint includes two claims for relief from alleged gender discrimination. The claims are based on Plaintiff's allegation that "[t]here was a causal connection between [Plaintiff's] gender and Defendant's termination of [Plaintiff]." Complaint at ¶ 51. The first claim is based on the alleged violation of Title VII of the Civil Rights Act. The second claim is based on the alleged violation of R.C. 4112.01. R.C. 4112 is Ohio's counterpart to Title VII, therefore, federal case law interpreting Title VII is applicable to actions brought under R.C. 4112. *Hamilton v. SYSCO Food Servs. of Cleveland, Inc.*, 170 Ohio App.3d 203, 2006-Ohio-6419, 866 N.E.2d 559, ¶ 27 (8th Dist.).

1. **Plaintiff cannot prove a prima facie case of discrimination.**

To establish a prima facie case of gender discrimination, Plaintiff must show that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) that the position was filled by a person outside the protected class." *Id.* at ¶ 29 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Where, as in the instant case, an employee is laid off as part of a reduction-in-force, the fourth requirement is modified to require Plaintiff to show "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021).

Plaintiff simply cannot meet this burden in this case. Due to the uncertain nature of the COVID-19 Pandemic, Plaintiff's position was not initially replaced. (Dec. Blake at 34). Rather, Cardinal's current Chief Operating Officer took over Plaintiff's Branch Manager duties, and continued to perform his own Interim COO duties from March 23, 2020 until May 18, 2020. (Dec. Blake at 34). When Cardinal moved the Interim COO into this role, it was uncertain how long he would continue performing both roles because it was unknown when the branches would fully reopen for customers. (Dec. Blake at 34).

Moreover, Plaintiff cannot show "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Thompson*, 985 F.3d at 522. Plaintiff admits that no Cardinal employee made any sex-based comments during her employment. (Dep. Plaintiff at 38). In addition, the reduction-in-force was significant: (1) Males and females were impacted by the reduction. (Dec. Blake at 30); (Dep. Plaintiff at Ex. 6); (2) Plaintiff's male Assistant Manager was selected for the reduction. (Dep. Plaintiff at 72-73); (3) In addition to Plaintiff and the Assistant Manager, Plaintiff admits that five

other Mentor branch employees were impacted by the reduction. (Dep. Plaintiff at 73); (Dec. Blake at 32); and (4) Plaintiff admits that other female branch managers were not impacted by the reduction. (Dep. Plaintiff at 47).

Finally, Defendant's Lakeland branch managed by Rob Petrie, a male, was shuttered shortly after Plaintiff's discharge. (Dep. Plaintiff at 83). Accordingly, Plaintiff cannot prove a prima facie case of gender discrimination. *McKinley*, W.D.Pa. No. 04-222 Erie, 2006 U.S. Dist. LEXIS 108506, at *16 ("Based on the foregoing, Plaintiff has failed to identify a male employee who was similarly situated to her and received more favorable treatment. Moreover, Plaintiff has failed to allege any other circumstances that give rise to an inference of gender discrimination. As a result, Plaintiff is unable to satisfy the fourth element of a *prima facie* case of gender discrimination, and such claim should be dismissed").

### 2. Plaintiff cannot meet the but for standard.

In addition to the higher standard applicable to a reduction-in-force, the United States Supreme Court, in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), held that the "but for" standard applies to Title VII claims. *Id.* at 362-363. The *Nassar* Court reviewed the "because of" language contained in the Title VII statute. *Id.* at 348. Based on the because of language, the Court held that Title VII claims "must be proved according to traditional principles of but-for causation..." *Id.* at 360. This standard "***requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.***" *Id.* (emphasis added); *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) (applied but for standard to sex discrimination claim under Title VII due to because of language); *GM, LLC v. FCA US, LLC*, 44 F.4th 548, 559 (6th Cir. 2022).

The same actor inference is applicable to Plaintiff's claim because the same group of employees made the decision to hire Plaintiff and to select her for termination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003) (en banc). The same actor inference allows a court "to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Id.* at 572 (*quoting Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461 (6th Cir. 1995)). Moreover, Plaintiff has no explanation for why a woman, Christine Blake, would somehow hire Plaintiff, but later select Plaintiff for a reduction due to Plaintiff's sex. (Dep. Plaintiff at 78). Accordingly, Plaintiff cannot meet the but for standard for insurance claims. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) (applied but for standard to sex discrimination claim under Title VII due to because of language).

### 3. Plaintiff cannot prove pretext.

If, *arguendo,* Plaintiff can establish a prima facie case, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for the adverse action. *Thompson*, 985 F.3d at 522. In this case, Defendant discharged Plaintiff and fourteen employees across all branches on the same day at the beginning of the economic uncertainty of the COVID-19 shutdown. (Dep. Plaintiff at 42). Plaintiff admits that she had never experienced anything like the COVID-19 shutdown. (Dep. Plaintiff at 62). She further admits that she cannot disagree with Defendant's decision that a reduction-in-force was necessary at the beginning of the COVID-19 shutdown uncertainty. (Dep. Plaintiff at 67).

Finally, because Defendant can prove a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to make a showing that the stated reason is merely pretext for unlawful discrimination. *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 838 (6th Cir. 2012). To establish pretext, a plaintiff may show the defendant's reason (1) has no basis in fact, (2) did not

actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Thompson,* 985 F.3d at 522. Plaintiff cannot meet any of these three pretext standards.

In this matter, Plaintiff admits that she cannot dispute Cardinal's decision to implement a reduction due to the COVID-19 Pandemic. (Dep. Plaintiff at 67). Fourteen positions were eliminated and a branch office was closed so Plaintiff cannot call the reduction into question. (Dep. Plaintiff at Ex. 6); (Dec. Blake at 31). Moreover, "[a]s of March 10, 2020, Plaintiff was Cardinal's lowest performing Branch Manager and only Branch Manager on disciplinary probationary status." (Dec. Blake at 27). Plaintiff admits that her discipline was not discriminatory (Dep. Plaintiff at 58). Finally, Plaintiff admits that she is unaware of any other branch manager being on disciplinary probation when the COVID-19 Pandemic began. (Dep. Plaintiff at 58). Accordingly, Plaintiff cannot meet the pretext standard.

## VI. CONCLUSION

Based on the above-cited arguments and authorities, there are no genuine issues of material fact and summary judgment should be entered in favor of Defendant on all claims asserted by Plaintiff.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
David.A.Campbell@lewisbrisbois.com

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November 2022, a true and correct copy of the foregoing has been electronically filed with the Court and notice was sent to all parties through the Court's EM/ECF system.

*/s/ David A. Campbell*
David A. Campbell (0066494)

*Attorney for Defendant*
