# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ABBIE SHIBE | ) | CASE NO. 1:21-cv-1436-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN |
| | ) | BRENNAN |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF ABBIE SHIBE'S** |
| CARDINAL CREDIT UNION, INC. | ) | **MEMORANDUM IN OPPOSITION** |
| | ) | **TO DEFENDANT'S MOTION FOR** |
| Defendant. | ) | **SUMMARY JUDGMENT** |

Now comes Plaintiff Abbie Shibe, by and thorough her undersigned counsel, and hereby submits to this Honorable Court Plaintiff's Memorandum in Opposition to Defendant Cardinal Credit Union, Inc.'s ("Cardinal") Motion for Summary Judgment. For the reasons set forth more fully below, outstanding issues of material fact preclude summary disposition of Plaintiff's discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Chapter 4112 of the Ohio Revised Code. Consequently, this Court should deny Defendant's Motion. A Memorandum in Opposition is attached hereto and incorporated by reference herein.

                                                             Respectfully submitted,

                                                             */s/ Kevin A. Buryanek*
                                                             Kevin A. Buryanek (0099300)
                                                             **SPITZ, THE EMPLOYEE'S FIRM**
                                                             25825 Science Park Drive, Suite 200
                                                             Beachwood, OH 44122
                                                             Phone: (216) 291-4744
                                                             Fax:   (216) 291-5744
                                                             kevin.buryanek@spitzlawfirm.com

                                                             *Attorney for Plaintiff Abbie Shibe*

**MEMORANDUM IN OPPOSITION**

I.     **FACTUAL BACKGROUND**

Plaintiff Abbie Shibe was hired by Cardinal in or around December 2018, as Branch Manager of Cardinal's Mentor, Ohio location.[1] Cardinal operates a financial services business that offers various products to individuals, companies and organizations throughout the Northeast Ohio area.[2] At all times relevant herein, Chirstine Blake served as Cardinal's Chief Executive Officer.[3] As it pertains to Shibe's employment, Blake, Mario Duvnjak (Cardinal's District Manager) and Cindy DeVito (Cardinal's Human Resources Manager) were all involved in the interviewing and hiring process.[4]

As Branch Manager, Shibe's responsibilities were characterized as follows:

> In general they're responsible for
> running the branch. So making sure it opens on
> time, it closes on time. As well that the
> staff is where they're supposed to be. They
> watch over the teller line to make sure that
> they're completing the transactions for the
> member. Watch the line, the length of the
> line. Make sure the member is serviced. To
> the members that are waiting in line, the
> members that come in, to make sure that we have
> a high quality of member service any time a
> member walks in the door.
> They also have loan officers at each
> branch. The loan officers are the ones that
> basically complete the loan application from
> beginning to the end of the loan. Maybe it can
> be a loan or also opening accounts. The branch
> managers also complete loan applications and

---

[1] Transcript of Deposition of Abbie Shibe ("Shibe Dep."), pp. 15, 24; Transcript of Deposition of Christine Blake ("Blake Dep."), p. 27. At the time Shibe was hired, Cardinal also operated branches located at Ashtabula, Austintown, Willoughby, and Lakeland Community College. Shibe Dep., p. 27; Blake Dep., p. 12.
[2] Declaration of Christine Blake ("Blake Dec."), ¶ 5.
[3] Shibe Dep., p. 23; Blake Dep., p. 11.
[4] Shibe Dep., pp. 23–24.

2

> open accounts as well. They're also hands-on
> branch managers.
> They are responsible for the loan
> officers, making sure that those applications
> are done, that they're error free, that they're
> done timely, that all of the compliance
> procedures are followed.
> They're also responsible for making sure
> all of the deadlines that are set by the COO
> ultimately or District Manager or myself are
> met by all of the branch team members.[5]

Indeed, Shibe brought with her to Cardinal roughly 30 years of experience working in the banking industry, including 16 years of prior branch management experience.[6] Utilizing her extensive banking experience, Shibe's performance as Branch Manager was strong in 2019. Shibe met the Mentor Branch's sales goals during each month of the 2019 fiscal year, exceeding the baseline $1 million mark set by the company.[7] As noted in her 2019 Performance Evaluation — performed by Duvnjak in or around December 2019 — the Mentor Branch "met MPS each month without missing [a] single month. Additionally, Mentor is currently at 115% in lending production."[8] Moreover, as recognized by Cardinal, "[i]n 2019, [Shibe] is consistently in the top three in production month over month."[9] Blake also positively reviewed Shibe's performance in or around February 2020, after which Shibe received a bonus for her performance to date.[10]

With the onset of the Covid-19 pandemic, and in response to various local, state, and federal government mandates concerning the pandemic, in March 2020, Cardinal assigned its branch employees — including Shibe — to "Teams" that would work in-office or remotely on a rotating basis.[11] Cardinal's division of employees into rotating "Teams" at its various branches

---

[5] Blake Dep., pp. 27–28.
[6] Shibe Dep., pp. 16–17.
[7] Shibe Dep., pp. 46, 105; Blake Dep., Ex. 2, Shibe 2019 Performance Evaluation.
[8] Blake Dep., Ex. 2, Shibe 2019 Performance Evaluation.
[9] Shibe Dep., p. 125; Blake Dep., Ex. 2, Shibe 2019 Performance Evaluation.
[10] Shibe Dep., p. 80.
[11] Shibe Dep., pp. 75, 87; Buryanek Aff., ¶ 2–3; Ex. 7, March 20, 2020 Emails.

was communicated via emails dated March 20, 2020 — a mere three days prior to Shibe's termination.[12]

Shortly thereafter, on or about March 22, 2020, Shibe was contacted by DeVito and told that her employment with Cardinal was being terminated, allegedly due to the pandemic.[13] Cardinal then issued a formal letter, dated March 23, 2020, confirming the termination of Shibe's employment.[14] In total, Cardinal terminated 15 employees of various positions on or about March 23, 2020.[15] Shibe was the only branch manager — and more importantly, the only female branch manager — terminated by Cardinal on March 23, 2020.[16] All similarly-situated male branch managers were retained by Cardinal, including Rob Petrie, who managed Cardinal's Lakeland Community College Branch, which itself was closed indefinitely in response to the pandemic in or around March 2020.[17]

After Shibe's termination, Cardinal appointed its male Chief Operating Officer as interim Branch Manager of the Mentor location.[18] Subsequently, the Mentor Branch Manager position was permanently filled by Jared Furnia (male), who previously served as Branch Manager for Cardinal's Willoughby, Ohio location, on or about May 18, 2020.[19]

---

[12] Buryanek Aff., ¶ 2–3; Ex. 7, March 20, 2020 Emails.
[13] Shibe Dep., p. 59. Defendant also posits that Shibe was terminated "due to her disciplinary probationary status and continuing performance issues." Blake Dec., ¶ 32.
[14] Blake Dep., Ex. 5, Shibe Termination Letter.
[15] Blake Dep., Ex. 6, List of Terminated Employees.
[16] Shibe Dep., pp. 78–79; Blake Dep., Ex. 6, List of Terminated Employees.
[17] Blake Dep., p. 66; Ex. 6, List of Terminated Employees.
[18] Blake Dec., ¶ 34.
[19] Shibe Dep., p. 82; Blake Dep., pp. 36–37; Blake Dec., ¶ 35.

## II. LAW AND ARGUMENT

### A. Standard for Summary Judgment.

Under Federal Rule of Civil Procedure 56(a), summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the Court of the basis for its motion.[20] Only if the moving party meets its initial burden does the burden then shift to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial."[21] Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"[22] **A court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party.**[23] Finally, if the parties present conflicting evidence, a court may not decide which evidence to believe; rather, credibility determinations must be left to the fact-finder.[24] Ultimately, the Court must determine "whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict[.]"[25]

### B. Genuine Issues of Material Fact Preclude Granting Defendant Summary Judgment on Plaintiff's Gender Discrimination Claims.

#### 1. *Prima facie* elements of discrimination under Title VII and Ohio Revised Code Chapter 4112.

Under Title VII, "an employer is prohibited from discharging or otherwise discriminating against any individual 'with respect to his compensation, terms, conditions, or privileges of

---

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[22] *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (**emphasis** added).
[23] *Anderson,* 477 U.S. at 255.
[24] *Id.*
[25] *Id.* at 252.

5

employment, because of such individual's . . . sex[.]'"[26] "[A]n unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."[27]

Likewise, under Ohio law, it is an unlawful discriminatory practice "[f]or any employer, because of the . . . sex . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.."[28] The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."[29]

"[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination."[30] In the absence of direct evidence of discrimination, and applying the *McDonnell Douglas* evidentiary framework,[31] a plaintiff can establish a *prima facie* case of discrimination by demonstrating that she: "'(1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position in question, and (4) was replaced by someone outside of the protected class or that the employer treated a similarly situated, non-

---

[26] *Vigil v. STS Systems Integration, LLC*, No. 3:18-cv-324, 2019 WL 4674562, *3 (S.D. Ohio Sept. 25, 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)).
[27] 42 U.S.C. § 2000e-2(m).
[28] R.C. § 4112.02(A).
[29] *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981) (*emphasis* in original).
[30] *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997) (citing *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995) ("a plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of facts which create an inference of discrimination.").
[31] *See generally Plumbers & Steamfitters*, *supra* (adopting three-step, burden-shifting analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

protected person more favorably.'"[32] "Establishing a prima facie case 'creates a presumption that the employer unlawfully discriminated against the employee.'"[33]

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer "to rebut the presumption of discrimination by presenting evidence of some legitimate, nondiscriminatory reason for its action."[34] If the employer does so, "the burden [shifts] back to the plaintiff to 'demonstrate, by a preponderance of the evidence, that the reason the employer offered for taking the adverse employment action is actually a pretext for discrimination.'"[35] A plaintiff may establish that an employer's proffered reason for the adverse employment action is pretextual by demonstrating that the stated reason had no basis in fact, was not the actual reason for the employment action, or was insufficient to explain the employer's action.[36] As the Ohio Ninth District Court of Appeals has stated, regarding pretext:

> Under the first method, the plaintiff provides evidence that the alleged reason for her discharge is "factually false." (Internal quotation marks and citation omitted.) *Dukes v. Associated Materials, L.L.C.*, 9th Dist. Summit No. 27091, 2014-Ohio-4322, 2014 WL 4824474, ¶ 21. Under the second method, the plaintiff "admit[s] the factual basis underlying the employer's proffered explanation and further admit[s] that such conduct could motivate dismissal[, but] attempts to indict the credibility of h[er] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." (Emphasis deleted.) (Internal quotation marks and citation omitted.) *Id.* Under the third method, the plaintiff presents evidence "that similarly situated employees were treated differently." (Internal quotation marks and citation omitted.) *Id.*[37]

---

[32] *Moody v. Ohio Department of Mental Health and Addiction Services*, 183 N.E.3d 21, 2021-Ohio-4578, ¶ 17 (10th Dist.) (quoting *Tanksley v. Howell*, 10th Dist. No. 19AP-504, 2020-Ohio-4278, 2020 WL 5203568, ¶ 20).
[33] *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, ¶ 11 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).
[34] *Kenner*, *supra*, at ¶ 28.
[35] *Moody*, *supra*, at ¶ 19 (quoting *Kenner*, *supra*, at ¶ 29).
[36] *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).
[37] *Dunn v. GOJO Industries*, 2017-Ohio-7230, 96 N.E.3d 870, ¶ 15 (9th Dist.) (quoting *Chiancone v. City of Akron*, 9th Dist. Summit No. 26596, 2014-Ohio-1500, 2014 WL 1423266, ¶ 18).

> **2. Plaintiff has established a *prima facie* case of discrimination and produced sufficient evidence to establish a genuine dispute of material fact regarding pretext.**

For purposes of Defendant's Motion for Summary Judgment, Cardinal does not appear to dispute that (1) Shibe, based on her gender, was a member of a statutorily protected class under Title VII and R.C. § 4112.02(A); (2) Shibe suffered an adverse employment action or actions, up to and including her termination; or (3) Shibe was qualified for the Branch Manager position she held at the time of her termination. Rather, Cardinal's primary arguments in favor of dismissing Shibe's discrimination claims are two-fold: (1) Shibe cannot satisfy the fourth prong of the *McDonnell Douglas* test; and (2) even if Shibe has established *prima facie* gender discrimination claims, she cannot show that the supposedly non-discriminatory reason(s) for her termination were pretextual.[38]

> **a. Plaintiff's *prima facie* gender discrimination case.**

Regarding the first prong of Defendant's argument, it is well-established that Shibe must demonstrate that "she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees."[39] Here, Shibe was initially replaced by Cardinal's male COO, filling the Mentor Branch Manager position on an interim basis.[40] While it is generally true that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties,"[41] this does not paint the full picture in this instance.

After Shibe's termination, the Mentor Branch Manager position was first offered on a full-time, permanent basis to Jonathan Livingston (male), a former District Manager for Cardinal.[42]

---

[38] Doc. 22, Page ID # 381–84.
[39] *Golden v. Mirabile Investment Corporation*, 724 Fed.Appx. 441, 447 (6th Cir. 2018) (internal quotations omitted).
[40] Blake Dec., ¶ 34. See also Doc. 22, Page ID # 381.
[41] *Myers v. U.S. Cellular Corp.*, 257 Fed.Appx. 947, 952 (6th Cir. 2007) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).
[42] Blake Dec., ¶ 35.

8

Ultimately, Furnia (male) was hired to permanently fill the position in or around May 2018.[43] This undisputed fact fits squarely within the *McDonnell Douglas* framework, for purposes of satisfying that test's fourth prong.

Moreover, Shibe has produced evidence that she *was* treated differently than similarly-situated male branch managers. As discussed above, Rob Petrie (male) was, at all times relevant to Shibe's claims, Branch Manager for Cardinal's Lakeland Community College location.[44] The parties do not dispute that, due to the Covid-19 pandemic, Cardinal closed the Lakeland Community College location indefinitely.[45] However, even though the location Petrie managed was shuttered in response to the pandemic, he was nonetheless retained by Cardinal.[46] In other words, compared to a similarly-situated male branch manager, Shibe was treated disparately when Cardinal terminated her on March 23, 2020. Overall, given she was ultimately replaced by a male and treated differently than other male branch managers, Shibe has produced sufficient evidence to establish *prima facie* gender discrimination claims.

### b. Defendant's stated reasons for termination were pretextual.

Though Shibe has satisfied her initial burden of setting forth a *prima facie* case of gender discrimination, Defendant further contends that Cardinal has proffered "legitimate, nondiscriminatory" bases for terminating Shibe's employment.[47] Specifically, Defendant argues that (1) "Defendant discharged Plaintiff and fourteen employees across all branches on the same day at the beginning of the economic uncertainty of the COVID-19 shutdown"; and (2) Shibe was

---

[43] Shibe Dep., p. 82; Blake Dep., pp. 36–37; Blake Dec., ¶ 35.
[44] Blake Dep., p. 66; Ex. 6, List of Terminated Employees.
[45] Blake Dep., pp. 66–67; Doc. 22, Page ID # 382 ("Defendant's Lakeland branch managed by Rob Petrie, a male, was shuttered.").
shortly after Plaintiff's discharge.
[46] Blake Dep., pp. 66–67.
[47] Doc. 22, Page ID # 383.

Cardinal's "lowest performing Branch Manager and only Branch Manager on disciplinary probationary status" at the time of her termination.[48]

As stated above, if an employer sets forth a nondiscriminatory reason or reasons for terminating an employee, the employee must show "that the 'nondiscriminatory' reasons the employer offered were not credible, but were merely a pretext for intentional discrimination."[49] The Sixth Circuit Court of Appeals has held that "[a] plaintiff can demonstrate pretext by showing that the [employer's] proffered reason [for the adverse action] (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."[50] On summary judgment, "[i]n evaluating pretext and the plaintiff's ultimate burden, the court should consider all [probative] evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage."[51]

Here, Shibe has presented evidence that satisfies the first and third methods of proving pretext. First, to the extent that Defendant contends that Shibe's allegedly poor job performance animated its decision to terminate her employment, this notion is belied by her *actual* performance while serving as Mentor's Branch Manager. There is no dispute that Shibe met and exceeded her sales goals during each month of the 2019 fiscal year, as set by Cardinal.[52] As provided in Shibe's 2019 Performance Evaluation, the Mentor Branch "met MPS each month without missing [a] single month. Additionally, Mentor is currently at 115% in lending production."[53] "In 2019, [Shibe

---

[48] Doc. 22, Page ID # 384.
[49] *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) (internal quotations omitted).
[50] *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).
[51] *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). Regarding the last method of proving pretext set forth above, this generally involves demonstrating that a plaintiff was treated differently than similarly-situated employees, typically outside the plaintiff's protected class. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).
[52] Shibe Dep., pp. 46, 105; Blake Dep., Ex. 2, Shibe 2019 Performance Evaluation.
[53] Blake Dep., Ex. 2, Shibe 2019 Performance Evaluation.

was] consistently in the top three in production month over month."[54] Shibe even received a pay bonus for her performance in February 2020, a mere month before she was terminated by Cardinal.[55]

And insofar as Defendant relies on the Covid-19 pandemic to justify its decision to terminate Shibe, this too contradicted by the record before this Court. Shibe was the only female branch manager terminated by Cardinal on March 23, 2020.[56] All male branch managers — including Rob Petrie, whose location was *closed indefinitely* in March 2020 — were retained.[57] At the summary judgment stage, a plaintiff must present enough evidence for a "trier of fact [to] reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him."[58] In light of the foregoing, Shibe has satisfied her *prima facie* burden and overcome Defendant's supposedly non-discriminatory bases for terminating her employment. As such, summary disposition of Plaintiff's claims at this juncture is not proper, and this Court should deny Defendant's Motion for Summary Judgment.

### 3. The same-actor inference is not dispositive of Plaintiff's claims.

Finally, Defendant argues that "[t]he same actor inference is applicable to Plaintiff's claim because the same group of employees made the decision to hire Plaintiff and to select her for termination."[59] More specifically, Defendant contends that "Plaintiff has no explanation for why a woman, Christine Blake, would somehow hire Plaintiff, but later select Plaintiff for a reduction due to Plaintiff's sex."[60]

---

[54] Shibe Dep., p. 125; Blake Dep., Ex. 2, Shibe 2019 Performance Evaluation.
[55] Shibe Dep., p. 80.
[56] Shibe Dep., pp. 78–79; Blake Dep., Ex. 6, List of Terminated Employees.
[57] Blake Dep., p. 66; Ex. 6, List of Terminated Employees.
[58] *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, 2011 WL 5873375, ¶ 12.
[59] Doc. 22, Page ID # 383. Those alleged individuals, in this case, are Blake, Duvnjak and DeVito.
[60] Id.

Generally speaking, the same-actor inference "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee."[61] However, the Sixth Circuit has expressly "reject[ed] the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual."[62] If a "factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact."[63]

Given the record before this Court, the evidence adduced by Plaintiff, and the Sixth Circuit's view of the same-actor inference, to the extent this Court finds that any such inference applies, it is insufficient to warrant granting Defendant's dispositive motion.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Abbie Shibe respectfully requests that this Honorable Court deny Defendant Cardinal Credit Union's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Kevin A. Buryanek*
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
kevin.buryanek@spitzlawfirm.com

*Attorney for Plaintiff Abbie Shibe*

---

[61] *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461, 463 (6th Cir.1995).
[62] *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003).
[63] *Wexler*, 317 F.3d at 573–74.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

I hereby certify that the instant matter is assigned to standard track and that the foregoing complies with Local Rule 7.1(f).

>    */s/ Kevin A. Buryanek*
>    Kevin A. Buryanek (0099300)
>    **SPITZ, THE EMPLOYEE'S FIRM**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 11, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties, who may access this filing through the Court's system.

>    */s/ Kevin A. Buryanek*
>    Kevin A. Buryanek (0099300)
>    **SPITZ, THE EMPLOYEE'S FIRM**