UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ABBIE SHIBE, | ) |
|     Plaintiff, | ) CASE NO. 1:21-cv-1436 |
| v. | ) JUDGE BRIDGET MEEHAN BRENNAN |
| CARDINAL CREDIT UNION, INC., | ) **MEMORANDUM OPINION** |
|     Defendant. | ) **AND ORDER** |

Before this Court is the motion for summary judgment filed by Defendant Cardinal Credit Union, Inc. (Doc. No. 22.) Plaintiff Abbie Shibe opposed this motion (Doc. No. 27), and Defendant replied in support (Doc. No. 28). For the reasons that follow, the motion is GRANTED, and the case is DISMISSED.

### I. Factual and Procedural Background

#### A. Factual Background

Defendant is an Ohio credit union. (Doc. No. 22-1 at 387-88.)[1] A credit union is a non-profit financial services institution owned, managed, and utilized by its members. (*Id.* at 387.) Christine Blake ("Blake") was Defendant's Chief Executive Officer at all times relevant to this dispute. (*Id.* at 387-89.) In early 2020, Defendant had branches in Mentor, Ashtabula, Austintown, Lakeland, and Willoughby, with Mentor being Defendant's "flagship" location. (Doc. No. 22-1 at 388.)

Plaintiff was hired on December 10, 2018, to serve as the Mentor branch manager. (*Id.* at

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

389; Doc. No. 21-1 at 115, 124.) Blake made the ultimate decision to hire Plaintiff. (Doc. No. 21-1 at 191-92.) Blake and Plaintiff are both women. (Doc. No. 22-1 at 389; Doc. No. 1 at 2.)

Plaintiff's responsibilities included managing employees, ensuring compliance with state and federal regulations, hitting financial benchmarks, and improving customer satisfaction. (Doc. No. 27-3 at 764-65; Doc. No. 27-4.) Before accepting this role, Plaintiff worked in the banking industry for roughly 30 years and spent about 16 years as a branch manager. (Doc. No. 21-1 at 116.)

For 2019, Defendant rated Plaintiff's overall performance a 3.6 on a 5-point scale. (Doc. No. 27-4 at 835.) Defendant rated Plaintiff's sales performance a 4, explaining that Mentor was meeting its lending production goals, and Plaintiff was "consistently in the top three in production month over month." (*Id.* at 833.) Giving her "job knowledge" a 2, Defendant noted that Plaintiff needed to improve her "knowledge, skills, and efficiency in task completion." (*Id.* at 833-34.) In the compliance section, Defendant highlighted that Mentor "consistently [had] the majority of errors . . . ." (*Id.*) Defendant concluded Plaintiff's 2019 review by giving Plaintiff a 2 on her employee management skills, noting that employee "turnover in 2019 was abnormal." (*Id.* at 835.)

On January 27, 2020, Defendant gave Plaintiff an Employee Verbal Warning Notice for failing to respond promptly to customer communications on two occasions. (*Id.*) The notice indicates that Plaintiff was placed on a 30-day probation for these infractions. (*Id.*)

Defendant inspected the Mentor branch and, on February 19, 2020, issued Plaintiff an Employee Written Warning Notice. (Doc. No. 22-4 at 542.) This time, Defendant reprimanded Plaintiff for not following onboarding procedures and failing to audit account cards before

submitting them to compliance. (*Id.*) Plaintiff was placed on a 60-day probation.[2] (*Id.*)

On March 10, 2020, Defendant forced Plaintiff to review and sign a document called "Abbie 2020 Expectations." (Doc. No. 22-8.) The three-page document lists Plaintiff's various job responsibilities. (Doc. No. 22-8.) The job expectations are broken into five categories: decision-making, management, sales performance, job knowledge, and compliance. (*Id.*) At the time Plaintiff executed this document, Plaintiff was Defendant's lowest performing branch manager and the only one on disciplinary probation. (Doc. No. 22-1 at 391.)

Defendant terminated Plaintiff on March 23, 2020. (Doc. No. 22-6 at 547.) Blake, along with two other employees, determined Plaintiff's termination was warranted because Covid-19 created a need to cut staff, and Plaintiff's specific performance issues and probation status elevated her on the list of employees to be eliminated. (Doc. No. 22-1 at 391-92.) Mentor's assistant branch manager (a male) was also terminated on March 23, 2020. (*Id.* at 392.) Because of Covid-19, Defendant terminated 14 employees and closed its branch located at Lakeland Community College. (*Id.*)

Plaintiff's position was immediately filled by Defendant's Chief Operating Officer ("COO"), who simultaneously performed the job duties and responsibilities of COO and those of

---

[2] In her statement of facts section, Plaintiff directs the Court to her deposition testimony indicating that Blake gave her a good performance review "in the middle of February 2020" and "gave [her] a bonus less than one month before she terminated [her]." (Doc. No. 27 at 568; Doc. No. 21-2 at 180.) Plaintiff does not clarify whether her review was generally "good" or only "good" for certain aspects of her role. The portion of the transcript cited by Plaintiff also does not indicate whether this bonus was discretionary and, if not, what aspects of her performance bonus determinations were based on. In other parts of the deposition transcript, Plaintiff testifies that Defendant gave nondiscretionary bonuses to branch managers based solely on the manager's employees' and their own sales performance. (Doc. No. 21-1 at 224.) In other words, if sales targets were hit, Defendant gave branch managers a bonus. (*See id.*) The fact that Plaintiff met or exceeded Defendant's sales expectations is not disputed. (Doc. No. 27-4 at 833.) Also undisputed is that sales performance was only one of Plaintiff's five performance expectations. (*See* "Abbie 2020 Expectations," Doc. No. 22-8.)

Plaintiff's position. (*Id.*) On May 1, 2020, Defendant offered Plaintiff's role to a male employee. (*Id.*) On May 18, 2020, Defendant's Willoughby branch manager, a male, transferred to Mentor to take over Plaintiff's prior position. (*Id.* at 392-93.)

### B. Procedural Background

Plaintiff initiated this case on July 26, 2021, alleging gender discrimination under Title VII (Count One) and Ohio Rev. Code § 4112.01 (Count Two). (Doc. No. 1.) Defendant moved for summary judgment on both counts on November 10, 2022. (Doc. No. 22.) Plaintiff opposed the motion on January 11, 2023. (Doc. No. 27.) Defendant replied in support on January 25, 2023. (Doc. No. 28.)

## II. Discussion

### A. Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of showing that no genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2005) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine dispute of

4

material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (additional citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted). "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655 (1962); *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) and (e). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving

5

parties should prevail as a matter of law." *Payne*, 767 F.3d at 530.

### B. Analysis

Plaintiff alleges gender discrimination under Title VII and Ohio Rev. Code § 4112.01. (Doc. No. 1.) Both parties agree that these claims should be analyzed together, as federal case law interpreting Title VII applies to actions brought under Ohio Rev. Code § 4112.01. (Doc. No. 22 at 380; Doc. No. 27 at 571.) *E.g.*, *Hamilton v. Sysco Food Servs. of Cleveland, Inc.*, 866 N.E.2d 559, 564 (Ohio Ct. App. 2006) (collecting cases). Both parties also agree that Plaintiff can only prove her claim with circumstantial evidence, meaning her claims must be analyzed under the *McDonnell Douglas* framework. (Doc. No. 22 at 381; Doc. No. 27 at 571-72.)

#### 1. *McDonnell Douglas* Overview

Under *McDonnell Douglas*, the plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981). If done, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 253. Should the defendant carry the burden, the plaintiff must then prove that the stated justification is pretext for discrimination. *Id.* Throughout this entire process, the burden of persuasion remains on the plaintiff to demonstrate that the defendant intentionally discriminated against her. *Id.*

#### 2. *Prima Facie* Case

The burden of establishing a *prima facie* case of discrimination "is not onerous." *Id.* The plaintiff must only demonstrate that she (a) was a member of a protected class, (b) suffered an adverse employment action, (c) was qualified for the position, and (d) was replaced by someone outside of the protected class or was treated differently than a similarly situated, non-protected comparator employee. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021). To grant

summary judgment at this *McDonell Douglas* stage, the Court must find that there is no genuine factual dispute as to the plaintiff's ability to establish one of these elements. *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 587 (6th Cir. 2002).

There is no dispute about the first three elements. Plaintiff is a woman and is thus a member of a protected class. (Doc. No. 1 at 5.) She also faced an adverse action when she was terminated. (Doc. No. 22-6 at 547.) *E.g.*, *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). And Defendant does not dispute that Plaintiff was qualified for her position. (*See* Doc. No. 22 at 381-82; Doc. No. 28 at 851-52.)

There are, however, some complications with the fourth element. When "an employee is laid off as part of a reduction-in-force[], the fourth requirement is modified[,] and . . . the plaintiff must present direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (citations and quotations omitted). The Sixth Circuit limits what constitutes a reduction-in-force:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Applying this definition here is not straightforward because immediately after Plaintiff's termination, "another employee [was] assigned to perform [Plaintiff's] duties in addition to [their] other duties." *Id.* (Doc. No. 22-1 at 392-93.) But this arrangement ended a few months later when Defendant hired a male to fill Plaintiff's role. (Doc. No. 22-1 at 392-93.) Defendant asks this Court to apply this heightened

7

standard without considering whether this subsequent hiring decision changes whether Plaintiff's termination can be characterized as a reduction-in-force.

Even without applying the heightened reduction-in-force standard, it is still unclear whether Plaintiff can satisfy the fourth element. A plaintiff typically has two options for establishing this element: she can show that "she was replaced by someone outside the protected class *or* was treated differently than similarly-situated, non-protected employees." *Briggs*, 11 F.4th at 508 (emphasis added). Here, Plaintiff argues that she can do both. (Doc. No. 27 at 573-74.) But, under the first method, she runs into the same complications identified above: it is unclear whether Plaintiff was truly replaced by the person Defendant hired on May 18, 2020, as for nearly two-months, the COO fulfilled Plaintiff's job duties in addition to his other duties. (Doc. No. 22-1 at 392-93.) Regarding the second method, Plaintiff briefly identifies a comparator employee. (Doc. No. 27 at 574.) But she has not provided enough information for the Court to find that this comparator is similarly situated in "all of the relevant aspects" of her employment. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). For its part, Defendant mainly focused on the replacement theory and did not acknowledge or apply the Sixth Circuit caselaw authorizing Plaintiff to establish a *prima facie* case with comparator evidence. *Briggs*, 11 F.4th at 508. (Doc. No. 22 at 381; Doc. No. 28 at 851.)

The parties' briefs do not fully address this element. Nonetheless, because this case is straightforwardly resolved at the pretext stage, the Court assumes – without deciding – that Plaintiff has met her burden of establishing a *prima facie* case.

### 3. Legitimate, Nondiscriminatory Reason

Defendant's burden at this stage is far from onerous. The employer must "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]."

*Burdine*, 450 U.S. at 255. Importantly, this does not mean that the employer must "persuade the Court that it was actually motivated by the proffered reasons . . . ." *Campbell v. Norfolk S. Corp.*, 876 F. Supp. 2d 967, 982 (N.D. Ohio 2012) (citing *Burdine*, 450 U.S. at 254). Rather, the employer's burden is satisfied if it simply "explains what [it] has done" or "produces evidence of legitimate nondiscriminatory reasons." *Burdine*, 450 U.S. at 256 (citations and quotations omitted); *see also Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("It is important to note that the defendant need not prove a nondiscriminatory reason for not promoting [the employee] but need merely *articulate* a valid rationale.")

Defendant articulates that the legitimate, nondiscriminatory reason for Plaintiff's inclusion in their Covid-19 employee reduction effort was her performance issues and probation status. (Doc. No. 22 at 383.) Defendant provides evidence in support of this reason. First, Blake's affidavit states that Covid-19 required Defendant to provide only drive-through services at its branches, leading it to consider reducing staff. (Doc. No. 22-1 at 391-92.) Second, Defendant directs the Court to two documents signed by Plaintiff, showing that Defendant determined that Plaintiff violated its policies. (Doc. Nos. 22-3, 22-4.) These documents also provide that Defendant placed Plaintiff on probation for these violations. (*Id.*) Third, Defendant provides Plaintiff's 2019 performance review, which establishes that Defendant documented Plaintiff's underperformance in numerous aspects of her role. (Doc. No. 27-4.) Fourth, Defendant provides a document signed by Plaintiff on March 10, 2020, listing Plaintiff's numerous job responsibilities. (Doc. No. 22-8.)

Defendant has provided more than enough evidence to meet its burden. *See Burdine*, 450 U.S. at 254, 256. And Plaintiff does not argue otherwise. (*See* Doc. No. 27 at 575.)

9

### 4. Pretext

To prove pretext, the employee may show that the employer's reason for the adverse action either: (a) has no basis in fact, (b) did not actually motivate the employer's actions, or (c) was an insufficient motivator for the employer's actions. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). "The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "Ultimately the plaintiff must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her.'" *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Chen*, 580 F.3d at 400) (bracketed language omitted).

Plaintiff attempts to prove pretext under the first and third methods. (Doc. No. 27 at 575.) In doing so, she argues that she performed her job well, as evidenced by the fact that she met or exceeded Defendant's sales expectations. (*Id.* at 575-76.) Plaintiff also contends that Covid-19 was an insufficient motivator because Defendant did not terminate any male branch managers, including ones who had their branches closed indefinitely. (*Id.* at 576.)

Defendant states Plaintiff's performance issues and probation status led it to choose her over other employees for a reduction-in-force. (Doc. No. 22 at 383.) At bottom, Plaintiff's pretext evidence must allow a jury to reasonably doubt that Plaintiff had performance issues or that those performance issues were insufficient for Defendant to terminate an employee. *See Blizzard*, 698 F.3d at 285

Plaintiff's evidence does not achieve this objective. Plaintiff's 2019 performance review establishes that Defendant expected Plaintiff to do more than simply have satisfactory sales

numbers. (Doc. No. 27-4; *see also* Doc. No. 22-8.) Defendant has also produced evidence that Plaintiff failed to fulfill some of these non-sales performance expectations and was placed on probation as a result.³ (Doc. Nos. 22-3, 22-4; *see also* Doc. No. 27-4.) Defendant, moreover, has established that Plaintiff was the most significant underperforming branch manager and the only manager on disciplinary probation. (Doc. No. 22-1 at 391.) That Plaintiff performed some parts of her job well and that higher-performing branch managers were not terminated is insufficient to cast doubt on the substantial evidence supporting Defendant's nondiscriminatory reason for termination. *Cf Chen*, 580 F.3d at 401 n.5 (noting that employee's evidence that she performed some parts of her job satisfactorily is insufficient at the pretext stage to overcome employer's evidence that employee failed to perform numerous other job expectations satisfactorily).

Because she cannot meet her pretext burden, Plaintiff cannot survive Defendant's summary judgment motion on her gender discrimination claims.

### III. Conclusion

For the reasons stated herein, Defendant's motion is GRANTED, and the case is DISMISSED.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: September 11, 2023

---

³ Plaintiff does not contend that the decisions to place her on probation twice were motivated by discriminatory animus. At her deposition, when asked whether these "two pieces of discipline were discriminatory," Plaintiff answered, "No." (Doc. No. 21-1 at 158.)